**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Neiberger and Associates, a division of Sharden, Inc., a Minnesota corporation,

Plaintiff,

Civ. No. 05-2865 (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

v.

WVK Incorporated, a Washington corporation, a/k/a Koval Marketing Associates, d/b/a Koval Marketing Associates, a/k/a/ KMA, d/b/a KMA,

Defendant.

---

Richard I. Diamond, Jesse H. Kibort, Richard I. Diamond, P.A., Minnetonka, Minnesota, for Plaintiff.

Thomas A. Forker, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

Plaintiff Neiberger and Associates ("Neiberger") has sued Defendant Koval Marketing Associates ("Koval") alleging that it has not been paid marketing commissions to which it is entitled. Koval has filed the instant motion seeking dismissal for lack of personal jurisdiction or, in the alternative, to transfer venue to the Western District of Washington. For the reasons stated below, the Court will grant Koval's Motion to Dismiss.

## BACKGROUND

Koval is a Washington corporation headquartered in Mukilteo, Washington. (Roy Koval Decl. at ¶ 2.) It acts as a sales representative to major manufacturers of consumer products including housewares, health and beauty, lawn and garden, hardware/home improvement, food and pet products. (Id. at ¶¶ 2-3.) It maintains regional offices in Oregon, Northern California, Southern California and Idaho and its sales area encompasses the western United States.[1] (Id. at ¶ 3.)

Neiberger is a wholly owned subsidiary of Sharden, Inc. ("Sharden"). (Neiberger Aff. at ¶ 3.) Sharden is a Minnesota corporation that acts as an independent sales representative for manufacturers selling consumer goods to retailers. (Id.) Both Neiberger and Sharden are located in Wayzata, Minnesota. (Id. at ¶¶ 2-3.)

In 1999, Denny Neiberger ("Mr. Neiberger"), of Neiberger, and Raymond Kasel ("Mr. Kasel"), of Kasel Associates Industries, Inc. ("Kasel"), a Colorado corporation, began discussing the possibility of Neiberger assisting Kasel in marketing its pet-treat product to several major national retailers. (Neiberger Aff. at ¶¶ 8-10.) In early 2000, the two companies entered into a "Sales Representative Agreement" whereby Neiberger would

---

[1]Koval's sales area includes the states of Alaska, Washington, Oregon, California, Nevada, Hawaii, Montana, Idaho, Utah, Colorado, New Mexico, Arizona and Wyoming. (Koval Decl. at ¶ 3.)

place Kasel's pigs' ear pet treats[2] in Sam's Club Stores and Costco Club Stores. (Id. at ¶ 10.)

In late 2003, Don Scorgie, vice president of Koval, contacted Mr. Neiberger in an effort to identify a pet treat supplier for Costco Wholesale ("Costco"). (Scorgie Decl. at ¶¶ 1-2.) Mr. Neiberger suggested Kasel as a possible supplier and arranged a meeting in Denver, Colorado, between Koval, Neiberger, and Kasel. (Scorgie Decl. at ¶ 2.) Following this meeting, Scorgie arranged a meeting at Costco's headquarters in Seattle, Washington, between Kasel, Koval, Neiberger, and Costco to discuss the possibility of selling Kasel's pet treats in Costco stores nation-wide. (Id. at ¶ 3.) Following the meeting, Costco declined to conduct a national sales program for Kasel's pet treats, but suggested that Koval contact Costco's eight regional buying offices to determine their interest in the product. (Id.)

Scorgie then contacted each of Costco's regional buying offices. (Id. at ¶ 4.) From the discussions that followed, Scorgie secured orders for the pet treats from four of Costco's eight regional buying offices. (Id.) None of the four offices that purchased the product is located in Minnesota.[3] Scorgie did not travel to Minnesota regarding the

---

[2]Kasel processes pigs' ears into pet treats for sale to the public. (Neiberger Aff. at ¶ 10.)

[3]The Costco offices that purchased Kasel's pet treats are located in San Diego, California; Garden Grove, California; Duluth, Georgia; and Oakbrook, Illinois. (Scorgie Decl. at ¶ 4.)

negotiation, distribution or sale of the pet-treat product to either Costco or its regional buying offices. (Id.)

On April 2, 2001, Mr. Neiberger sent Scorgie a letter together with a proposed agreement outlining how Neiberger and Koval would divide commissions from the sale of Kasel's pet treats to Costco's stores (the "Agreement"). (Neiberger Aff. at ¶ 12; Forker Aff. Ex. C.) The subject line of the Agreement reads "Kasel Commissions," and the Agreement provides that Koval is to receive 60%, and Nieberger is to receive 40%, of the commissions. (Forker Aff. Ex. C.) On April 3, 2001, Scorgie signed the Agreement while in Washington and faxed a copy to Neiberger. (Id.; Scorgie Decl. at ¶ 5.) The Agreement was the only business transaction between Koval and Neiberger. (Koval Decl. ¶ 14.)

Neiberger has now brought suit against Koval, claiming that Koval has failed to pay Neiberger the commissions to which it is entitled under the Agreement. (Compl. at ¶ 3.8.) Koval has moved to dismiss the Complaint based on lack of personal jurisdiction or, in the alternative, to transfer venue to the Western District of Washington.

## STANDARD OF DECISION

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing that personal jurisdiction exists. Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998). For the purposes of a prima facie showing, the Court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). However, the plaintiff must ultimately prove by a preponderance of the

evidence, at trial or at an evidentiary hearing, that jurisdiction exists. Id. Because courts construe Minnesota's long-arm statutes to extend jurisdiction over non-residents to the maximum extent permitted by the Due Process Clause of the United States Constitution, the Court must only determine whether the exercise of personal jurisdiction over Koval comports with due process. Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995).

The existence of personal jurisdiction is appropriate when the defendant has sufficient "minimum contacts" with the forum state that are more than random, fortuitous or attenuated contacts, "such that summoning the defendant would not offend traditional notions of fair play and substantial justice." Pecoraro v. Sky Ranch For Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003) (citations omitted). "The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." Id. at 562 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). The district court must consider the defendant's contacts with the forum in the aggregate, not individually, and must look at the totality of the circumstances. Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995).

The Court considers the following five factors to determine the sufficiency of the defendant's contacts: (1) the nature and quality of the contacts with the forum state, (2) the quantity of those contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of

the parties. Pecoraro, 340 F.3d at 562 (citing Digi-Tel Holdings, Inc. v. Proteg Telecomm., Ltd., 89 F.3d 519, 522-23 (8th Cir. 1996)). These considerations incorporate the notions of both "minimum contacts" and "fair play and substantial justice." Sybaritic, Inc. v. Interport Int'l Inc., 957 F.2d 522, 524 (8th Cir. 1992). The first three are of primary importance, while the last two are secondary. Pecoraro, 340 F.3d at 561.

**ANALYSIS**

Neiberger argues that specific jurisdiction exists over Koval because its cause of action for breach of the Agreement "arises directly from WVK's visits and other communications (via telephone, facsimile, e-mail) with Neiberger in Minnesota."[4] (Mem. in Opp'n at 9.) To support this argument, Neiberger argues that four distinct Minnesota contacts subject Koval to personal jurisdiction in Minnesota: 1) Koval entered into an agreement establishing an "anticipated ongoing relationship" with Neiberger,

---

[4]Specific jurisdiction refers to jurisdiction over causes of action "arising from or related to a defendant's actions within a forum state," Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 nn.8 & 9 (1984), while general jurisdiction refers to the powers of the forum state to adjudicate any cause of action involving a particular defendant regardless of where that cause of action arose if the defendant maintains "continuous and systematic" contacts with the forum state, Morris v. Barkbuster, Inc., 923 F.2d, 1277, 1281 (8th Cir. 1991) (quoting Helicopteros, 466 U.S. at 418-419). Neiberger does not argue that Koval is subject to general jurisdiction in Minnesota. Furthermore, the facts present before the Court would not support a determination that general jurisdiction exists. Koval's only regular contact with Minnesota is its representation of two Minnesota companies in their West Coast operations, Nordicware and Pin Jang-Home Electronics. (Williamson Decl. at ¶ 2). Koval does not have any agents or employees in Minnesota. (Id. at ¶¶ 4, 11). Employees of Koval have traveled to Minnesota only twice to attend Nordicware sales meetings and never to attend Pin Jang-Home Elements sales meetings. (Williamson Decl. at ¶¶ 5, 6, 11.) These contacts are not sufficient to support an exercise of general jurisdiction.

2) correspondence was exchanged between Scorgie and Mr. Neiberger, 3) Koval sent commission payments to Neiberger pursuant to the Agreement, and 4) Scorgie traveled to Minnesota while negotiating the Agreement. (Mem. in Opp'n at 8.)

Neiberger initially points to the parties' "anticipated ongoing relationship" as evidence that Koval is subject to personal jurisdiction in Minnesota. Neiberger provides no evidence to support its assertion that the parties anticipated an ongoing relationship. Neiberger appears to rely on the fact that commissions from the sale of Kasel's pet treats would be continually divided between the two companies. However, the Agreement has no provision that either company is to provide the other with future services. See Paulucci v. William Morris Agency, Inc., 952 F. Supp. 1335, 1340 (D. Minn. 1997) (Maryland author who did not enter Minnesota was subject to personal jurisdiction in Minnesota when the contract required him to send manuscripts to a Minnesota agent and keep in continual contact with that agent); St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc., 108 F. Supp. 2d 1057, 1061 (D. Minn. 2000) (Texas company was subject to personal jurisdiction in Minnesota when it contracted with a Minnesota insurer to service claims under its insurance policies).

In the instant case, the companies engaged in a single business transaction and merely agreed on a fixed percentage commission of profits from that business transaction.[5]

---

[5]In the Agreement, Mr. Neiberger did request that Scorgie: "[p]lease keep careful records of all purchase orders to Kasel Industries and have you[r] girls send me copies []." (Forker Aff. Ex. C.) This request, although arguably establishing a future obligation for Koval, does not require Neiberger to assist in either Costco's or Koval's obligations under

Profits from this isolated agreement do not rise to the level of purposeful availment of the Minnesota forum. Therefore, the Court determines Koval did not anticipate an ongoing relationship such that it would be subject to personal jurisdiction in Minnesota.

The fact that Scorgie and Mr. Neiberger communicated by mail or telephone, and that Koval sent commission payments to Neiberger, is also insufficient to establish that this Court has personal jurisdiction over Koval. "Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause." Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002). The fact that commission payments were sent to Neiberger also does not establish personal jurisdiction. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 656 (8th Cir. 1982) (Texas corporation's payment to an Arkansas bank coupled with telephone and mail correspondence with an Arkansas corporation was not sufficient to establish personal jurisdiction in Arkansas). Accordingly, Koval is not subject to personal jurisdiction in Minnesota because it has corresponded with and sent commission payments to Neiberger.

Neiberger also points to Mr. Neiberger's statement that Scorgie "personally traveled to Minnesota on numerous occasions," and that "[d]uring these visits, Mr. Scorgie of WVK and [Mr.] Neiberger conducted detailed discussions regarding their business relationship in Minnesota" as evidence that Koval is subject to personal jurisdiction in Minnesota. (Neiberger Aff. ¶¶ 18, 19.) It also alleges that Koval ships "thousands of pigs' ear pet

---

their contract. It therefore does not establish an ongoing relationship between the parties.

treats for sale to the general public in Minnesota." (Id. at ¶ 22.) Scorgie however, specifically refutes these allegations, and in his sworn declaration states that: "[a]t no time have I personally visited Minnesota to meet with Mr. Neiberger to conduct detailed discussions regarding their business in Minnesota . . . . In fact, I have never been to Minnesota." (Scorgie Dec. at ¶ 3 (quotations omitted).) Scorgie also states that "Koval ships no products to Costco. Kasel Industries ships the product[s] to Costco's regional buying offices. The Costco buying office determines where the product[s] [are] shipped." (Id. at ¶ 6.)

A party may not establish a prima facie case of specific personal jurisdiction on conclusory allegations. Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2006). Here, the only evidence that Neiberger has submitted in support of its argument for personal jurisdiction is the Affidavit of Mr. Neiberger which states that Scorgie was in Minnesota on "numerous" occasions and that he was there to conduct "detailed discussions regarding their business relationship." (Neiberger Aff. at ¶¶ 18, 19.) Neiberger, however, has failed to provide evidence supporting these conclusory allegations despite ample opportunity to do so.[6] Specifically, it has failed to provide evidence of when or where Scorgie allegedly met with Mr. Neiberger. It has also failed to provide evidence of how many times the parties allegedly met other than to say that these meetings were "numerous." Finally, it has also failed to provide evidence of the specifics of Scorgie and Mr. Neiberger's allegedly

[6] In April 2006, Koval served Neiberger with discovery requests relating to personal jurisdiction. (Reply Mem. at 6.) Neiberger has failed to respond to these requests. (Id.)

"detailed" discussions. Accordingly, in the face of Scorgie's Affidavit to the contrary, the Court determines that Neiberger has not provided sufficient evidence to establish a prima facie case that Scorgie entered Minnesota or that, if he entered Minnesota, he conducted discussions regarding the Agreement sufficient to establish personal jurisdiction.

Even if Neiberger had presented evidence that Scorgie had traveled to Minnesota to discuss the parameters of the companies' business relationship, it would still fail to establish personal jurisdiction. The physical presence of an agent in a forum is insufficient alone to establish personal jurisdiction. See Porter, 293 F.3d at 1075 (Missouri court did not have personal jurisdiction over Connecticut law firm when the law firm appointed an agent to transact business in Missouri.); Austad Co. v. Pennie & Edmunds, 823 F.2d 223, 226 (8th Cir. 1987) (New York law firm was not subject to personal jurisdiction in South Dakota when it sent associate and law clerk to South Dakota for three days to review documents). Koval does not maintain an office in Minnesota and Neiberger has failed to provide any evidence that Koval ever advertised or solicited business in Minnesota. See Austad, 823 F.2d at 226. Accordingly, the Court determines that Neiberger has failed to make a prima facie case that Koval is subject to personal jurisdiction in Minnesota.

## CONCLUSION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that Koval's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 12) is **GRANTED** and the Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: September 18 , 2006

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge